UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

RANDALL W. DELLINGER,

          Defendant.
_____/

Criminal No. 12-cr-20542

Hon. Mark A. Goldsmith
United States District Judge

## OPINION AND ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS (DKT. 32) AND DISMISSING THE INDICTMENT (DKT. 13) WITHOUT PREJUDICE

### I.  INTRODUCTION

The matter before the Court concerns the proper interpretation of the relationship between two provisions of the Speedy Trial Act that exclude time from the 70-day period in which a criminal defendant must be brought to trial: 18 U.S.C. § 3161(h)(1)(F) (providing that any delay "resulting from transportation of any defendant . . . to and from places of examination or hospitalization" beyond ten days is presumptively unreasonable) and 18 U.S.C. § 3161(h)(4) (excluding time "resulting from the fact that the defendant is mentally incompetent . . . to stand trial").

Before the Court is Defendant Randall Dellinger's motion to dismiss the indictment with prejudice, based on a delay in transporting him for mental health treatment and evaluation. Mot. to Dismiss (Dkt 32). The Government does not challenge Defendant's allegation that he was not transported to a suitable facility for nearly three months following this Court's finding that he was not competent to stand trial. The Government also does not challenge that this delay was the

1

result of an error by the U.S. Marshals Service.[1] Nevertheless, the parties dispute whether this delay, even if unreasonable, is excludable from the Speedy Trial Act calculation given the Court's earlier finding of mental incompetency. Because the Court concludes that section 3161(h)(4) does not trump section 3161(h)(1)(F), and because the transportation delay here was unreasonable, the indictment must be dismissed. However, the Court determines that dismissal without prejudice is appropriate in light of the circumstances of this case. Therefore, the Court grants Defendant's motion in part. The Court also orders counsel to appear on November 6, 2013 at 9:30 A.M. to discuss whether further proceedings or hospitalization is required pursuant to 18 U.S.C. § 4246 in light of Defendant's mental condition. The Court stays dismissal of the indictment until resolution of whether further proceedings or hospitalization is required.

## II. BACKGROUND

Defendant is charged with interstate communication of a threat, in violation of 18 U.S.C. § 875(c), as a result of an alleged telephone call to United States Senator Carl Levin that contained a threat to injure him and others. Indictment (Dkt. 13).

On June 28, 2012, Magistrate Judge Hluchaniuk conducted the initial appearance in this case after the filing of the complaint (Dkt. 1). During that proceeding, the Government moved for detention and a hearing to determine mental competency. Magistrate Judge Hluchaniuk scheduled that hearing for August 1, 2012. The competency examination was conducted by Dr. Harold Sommerschield, who concluded Defendant was competent to stand trial. Order at 2 (Dkt. 12). The Magistrate Judge subsequently found Defendant to be competent to stand trial and released him on a $25,000 unsecured bond (Dkts. 11, 12).

---

[1] The Government did not challenge Defendant's assertion on these points in its response to his original motion, see Gov't Resp. (Dkt. 33), nor did it file a supplemental brief on these issues as ordered by the Court (Dkt. 36). Accordingly, the Court finds these facts to be uncontested.

On August 15, 2012, a federal grand jury returned a one-count indictment against Defendant.  Indictment (Dkt. 13).  Defendant appeared for arraignment on August 23, 2012 and pled not guilty.  Although trial originally was scheduled for October 2012, it was continued until December 17, 2012 by stipulation of the parties.  10/4/2012 Stipulation (Dkt. 17).

On December 3, 2012, the parties entered into a stipulation allowing Defendant to obtain an independent expert at the Government's expense for a psychological examination to confirm Defendant's competency to stand trial.  12/3/2012 Stipulation (Dkt. 18).  The parties agreed that "[t]rial in this matter should be adjourned pending completion of the examination, and that the resulting period of delay be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act."  Id. at 2.

Defense counsel then filed an ex-parte motion to transport Defendant to the U.S. Marshals Service lock-up for an independent psychological examination on February 20, 2013.  Ex Parte Mot. for Order to Transport Def. (Dkt. 26).[2]  The motion was granted on February 21, 2013 (Dkt. 27), and the examination occurred in March 2013.  Order of Commitment (Dkt. 30).

The Court then scheduled another competency hearing for April 9, 2013.  The parties subsequently requested a continuance as a result of defense counsel's schedule; they agreed that any resulting period of delay was to be excluded from the Speedy Trial Act's calculation.  4/8/2013 Stipulation (Dkt. 28).  The Court re-scheduled the hearing for May 21, 2013 (Dkts. 28, 29).

At the May 21 hearing, the Court found Defendant incompetent to stand trial. Order of Commitment (Dkt. 30).  The Court ordered that

> pursuant to 18 U.S.C. § 4241(d)(1), defendant is committed to the custody of the Attorney General for hospitalization, examination and treatment in a suitable facility for a reasonable period of time,

---

[2] Defendant had previously consented to detention pending a bond revocation hearing.

3

> not to exceed 120 days, for the purpose of evaluation and determining whether there is a substantial probability that in the foreseeable future defendant will attain the capacity to permit the proceedings to go forward.
>
> \* \* \*
>
> IT IS FURTHER ORDERED, that the United States Marshal's Service promptly and expeditiously transfer defendant to a suitable facility, to be determined by the Attorney General, and that the United States Marshal's Service act as quickly as reasonably possible so as to minimize the period during which defendant must travel to, be confined in, and be returned from the facility where such treatment will be conducted. The time period associated with this process, from the filing date of the Order for Psychiatric or Psychological Examination (R. 18) through and including the date on which a final determination is made regarding whether defendant has regained his competency to stand trial, is excluded under the Speedy Trial Act pursuant to the terms of 18 U.S.C. § 3161(h)(1)(A) and (h)(4).

Id. The Court then set another competency hearing for September 24, 2013. Notice to Appear (Dkt. 31).

On July 11, 2013, defense counsel sent a letter to the Court noting that the U.S. Marshals Service had informed him that Defendant still remained at the Genesee County Jail. Ex. A. to Def.'s Mot. (Dkt. 32-1). According to defense counsel, the Marshals Service told him that the transportation order must have "slipped through the cracks." Def.'s Mot. at 5 (Dkt. 32). Defense counsel also claimed that he faxed a copy of the May 21, 2013 Order to the Marshals Service and that an adjournment of the scheduled competency hearing may be necessary to allow sufficient time for Defendant's evaluation and treatment. Ex. A. to Def.'s Mot.

Defendant was transported to FTC Oklahoma City on August 19, 2013, and he arrived at MCFP Springfield on or around August 29, 2013. Def.'s Mot. at 2; Gov't Resp. at 6 (Dkt. 33). Defendant then filed the instant motion to dismiss (Dkt. 32) on September 11, 2013. The Court held a hearing on September 24, 2013, during which it stayed treatment pending the outcome of the motion. The Government filed its response to the motion on September 27, 2013 (Dkt. 33),

and Defendant filed a reply on October 1, 2013 (Dkt. 34). The Court held a hearing on the motion on October 3, 2013, and ordered the parties to file supplemental briefing thereafter. Order Regarding Supp. Br. on Def.'s Mot. to Dismiss (Dkt. 36). Defendant filed his supplemental brief on October 15, 2013. Def.'s Supp. Br. (Dkt. 37). The Government did not file a supplemental brief.

### III. ANALYSIS

#### A. The Speedy Trial Act

The Speedy Trial Act provides, in relevant part, as follows:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). The Act also sets forth a penalty for failure to meet the established timeline:

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3).

Id. § 3162(a)(2). This provision "mandat[es] dismissal of the indictment upon violation of [the] precise time limits." United States v. Taylor, 487 U.S. 326, 343-344 (1988).

As noted in section 3162(a)(2), however, there are certain time periods that are excludable from the 70-day Speedy Trial Act limitation. See United States v. Dunbar, 357 F.3d 582, 591 (6th Cir. 2004) ("The Act provides the flexibility necessary to conduct fair criminal

5

trials by excluding days from the seventy-day Speedy Trial clock for various pretrial proceedings.") vacated and remanded on other grounds by Dunbar v. United States, 543 U.S. 1099 (2005). These periods are set forth in section 3161(h). Sections 3161(h)(1)(F) and 3161(h)(4) describe the excludable time periods particularly relevant to the instant motion:

> **(1)** Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
> \* \* \*
>
> **(F)** delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;
>
> \* \* \*
>
> **(4)** Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

Here, the Court found Defendant mentally incompetent to stand trial on May 21, 2013, placed Defendant in the custody of the Attorney General for hospitalization, examination, and treatment at a suitable facility, and ordered the U.S. Marshals Service to promptly and expeditiously transfer Defendant to that suitable facility. Order of Commitment at 1-2 (Dkt. 30). Instead of quickly transferring Defendant, however, it appears that an error by the U.S. Marshals Service resulted in Defendant remaining at the jail for nearly three months. The Government does not challenge Defendant's assertion that this more than ten-day transportation delay would be considered unreasonable, and thus non-excludable, if section 3161(h)(1)(F) applies. However, the parties dispute whether section 3161(h)(1)(F) continues to have force following a finding of incompetency. The Court now turns to that inquiry.

### B. The Relationship Between Section 3161(h)(1)(F) and Section 3161(h)(4)

Defendant argues that the nearly three-month delay before transporting him to a suitable facility for treatment, examination, and evaluation following this Court's May 21, 2013 Order is non-excludable time pursuant to section 3161(h)(1)(F). Defendant contends that this entire period should be included in the Speedy Trial Act calculation, less the ten-day period allowed by section 3161(h)(1)(F), which would mean that Defendant was not brought to trial within the statutorily mandated 70-day period. Def.'s Mot. at 4-5. The Government responds that section 3161(h)(4) automatically excludes all time following a finding of incompetency, regardless of reasonableness. Gov't Resp. at 12-14. Therefore, in essence, the parties dispute whether a finding of mental incompetency mandates that the exclusion for delay resulting from incompetence set forth in section 3161(h)(4) trumps the transportation limitation of section 3161(h)(1)(F).

There is a split of authority on this issue. Some courts have concluded that section 3161(h)(4) trumps section 3161(h)(1)(F), such that transportation delays are excludable — no matter how unreasonable — if the defendant previously was found mentally incompetent to stand trial. See, e.g., United States v. Bauman, No. 07-20052, 2008 WL 5111135, at **2-3 (D. Kan. Dec. 4, 2008); United States v. Lewis, 484 F. Supp. 2d 380, 390-391 (W.D. Pa. 2007); United States v. DeGideo, No. 04-100, 2004 WL 1240669, at *4 (E.D. Pa. May 18, 2004). These courts reach this conclusion for two reasons. First, the courts reason that any delays in transportation are "subsidiary" to the finding of incompetence, i.e., the defendant would not have been waiting for transportation but for the court's finding, and the defendant would not otherwise have been available for trial during the delay due to the incompetency. See Bauman, 2008 WL 5111135, at **2-3 (citing DeGideo, 2004 WL 1240669, at *4); see also Lewis, 484 F. Supp. 2d

7

at 390-391 ("Defendant was not otherwise available for trial [during the delay] due to his state of incompetency. Therefore, to the extent there was unreasonable delay in transporting Defendant to USMCFP, the delay was also independently attributable to his state of incompetency."). Second, the courts note that section 3161(h)(4) does not contain an explicit reasonableness limitation on excludable time, unlike section 3161(h)(1)(F). See DeGideo, 2004 WL 1240669, at *4. The courts, therefore, decline to read such a requirement into that provision.

On the other hand, some courts have concluded that an unreasonable transportation delay is not excludable, even if the defendant already was found mentally incompetent to stand trial. See, e.g., United States v. Sparks, 885 F. Supp. 2d 92, 100-101 (D.D.C. 2012); United States v. Hernandez-Amparan, 600 F. Supp. 2d 839, 842-843 (W.D. Tex. 2009). These courts reach this conclusion because the delay is directly attributable to the failure to transport — not to the defendant's incompetence.

The Court finds the second line of cases to be more persuasive and a better effectuation of Congressional intent. To be applicable, both provisions require the delay to be "resulting from" the stated event — transportation and mental incompetence respectively. Although both lines of cases above reference the "resulting from" language to support their interpretations of the Act, the Court finds it untenable to conclude that an unreasonable transportation delay due to negligence by the U.S. Marshals Service "result[ed] from" Defendant's mental incompetence. Admittedly, Defendant would not have needed the transportation but for this Court's finding of incompetence, but it is also true that Defendant could have been receiving treatment sooner — and may have been restored to competence (or found not restorable to competence) more quickly — but for the error. Simply put, the reason for the delay in this case was not "resulting from" Defendant's mental condition, although that may have been a necessary condition for the delay

8

to occur. Because Defendant did not cause the Marshals Service to let this Court's Order "slip[] through the cracks," the delay in this case is attributable to a mistake by the U.S. Marshals Service.

The Court finds the decision in Sparks, 885 F. Supp. 2d at 100-101, particularly instructive on this point. In that case, the defendant was found incompetent to stand trial on August 19, 2011, and the court ordered him returned to the hospital for treatment, with the objective of restoring his competency. Id. at 95. Due to a clerical error, however, the order was "not delivered to the Marshals Service by the Clerk of the Court in a timely fashion, and the Marshals Service did not receive the August 19, 2011 Order until December 16, 2011." Id.

The defendant and the Government took positions similar to those asserted in the instant case: the defendant claimed the transportation delay was not excludable, whereas the Government argued that section 3161(h)(4) trumped the transportation provision. In interpreting the "resulting from" language, the court noted that "while an excludable event need not cause an actual delay to be applicable, a given exclusion must actually be the cause of the excludable event to be applicable." Id. at 100-101. With this in mind, the court found that "the delays in this case were caused by (i.e., resulted from) a failure to transport the defendant . . . for court-ordered psychiatric treatment. . . . The fact of the defendant's incompetency had little to do with the delay, other than giving rise to the need to transport him for treatment." Id. Similarly here, the three-month delay in the instant case had little to do with Defendant's incompetency; it was caused by a negligent failure to transport Defendant.

The Court further concludes that this interpretation of the "resulting from" language is consistent with the language of section 3161(h)(1)(F), which, unlike the Government's view, draws no distinction based on a defendant's competency status. Section 3161(h)(1)(F) applies

9

to transportation "to and from places of examination or hospitalization," without specifying the underlying reason for the "examination or hospitalization." If that provision was not meant to apply to transportation "to and from places of examination or hospitalization" for purposes of competency restoration, the language should have evidenced such a distinction.

The Court's reading of the statute is further supported by the purpose of the reasonableness restriction in section 3161(h)(1)(F).[3] This limitation on excludable transportation time was included out of a Congressional desire that the Marshals Service not delay transporting prisoners for economic reasons, such as waiting for more prisoners to be assembled before incurring the cost of moving them. See United States v. Taylor, 821 F. 2d 1377, 1384 n.10 (9th Cir. 1987), rev'd on other grounds, 487 U.S. 326 (1987). Under the Government's interpretation, however, the U.S. Marshals Service could delay transporting incompetent detainees for economic reasons without recourse under the Speedy Trial Act. Congress could not reasonably have intended to limit the transportation exclusion along these lines.

Indeed, to draw a line based on a finding of incompetence would be to say that Congress intended to protect those that were not yet deemed incompetent, while essentially ignoring those previously declared incompetent. There is no reason to believe that Congress was less concerned about incompetent defendants than it was about defendants whose competency had not yet been determined. In both cases, trial cannot proceed until competency is established, and both classes of defendants appear equally worthy of Congressional concern for prompt adjudication of their cases.[4]

---

[3] Despite the concerns outlined in DeGideo, 2004 WL 1240669, at *4, the Court's decision does not read a reasonableness requirement into section 3161(h)(4). Rather, the Court determines that the delay in this case properly fits within section 3161(h)(1)(F), rather than section 3161(h)(4).

[4] This concern is evidenced by the Insanity Defense Reform Act of 1984, § 18 U.S.C. 4241(d). That Act sets reporting requirements and time limitations on the Attorney General's attempt to

The Government argues that, under the plain language of the statute, section 3161(h)(1)(F) cannot apply to the competency restoration circumstance because there is no "proceeding" causing the delay. In particular, the Government highlights the language of the opening provision, section 3161(h)(1), which restricts excludable time to delays "resulting from other <u>proceedings</u> concerning the defendant." (Emphasis added). And the Government contends that the definition of "proceedings" is limited to in-court proceedings and other proceedings directly related to the prosecution itself. The Government thus argues that because efforts to restore competency are not related to the prosecution, i.e., a "proceeding" in the traditional sense, any delays in those efforts — including delays transporting the defendant to treatment and evaluation — fall under section 3161(h)(4), not section 3161(h)(1)(F).

While the statute is not a model of clarity, the Court concludes that the Act's language supports its interpretation that section 3161(h)(4) does not trump section 3161(h)(1)(F). As the

---

restore a defendant to competency. See id. (initial four-month period with opportunities for additional time upon particular showings made to a court). These requirements suggest a Congressional concern with promptness in trying to restore competency. Cf. United States v. Strong, 489 F.3d 1055, 1061 (9th Cir. 2007) ("the duration of the commitment authorized under § 4241(d) is inherently limited").

Indeed, in arguing that section 3161(h)(1)(F) of the Speedy Trial Act does not apply post-incompetency, the Government points to the Insanity Defense Reform Act as the safety valve to avoid the possibility of an indefinite delay in transporting an incompetent defendant. The Government notes that, under the Act, the Attorney General may only hospitalize an incompetent defendant for four months before having to seek additional time from the Court. See 18 U.S.C. § 4241(d). This safeguard, however, does little to offer incompetent defendants protection against unreasonable delays in transportation. Under the Government's interpretation, an incompetent defendant could sit in jail without treatment for up to four months before anyone was notified. Moreover, as long as the court finds "a substantial probability that . . . [within a reasonable period of time the defendant] will attain the capacity to permit the proceedings to go forward," the four-month limit could be extended. Id. Consequently, the Government would be able to wait to have an evaluation completed until shortly before the four-month deadline expires, and then request additional time for treatment, thereby stalling the restoration to competency without any sanction for the delay. This also would allow the Government to ignore court orders requiring prompt transportation of defendants, as occurred here. See Order of Commitment at 2 (Dkt. 30). Whatever protection the Insanity Defense Reform Act provides, it does not afford the same protection established under the Speedy Trial Act.

11

Government points out, section 3161(h)(1)(F) is listed under the broader umbrella of section 3161(h)(1), which excludes "[a]ny period of delay resulting from other proceedings concerning the defendant." Section 3161(h)(1) goes on to provide examples of such proceedings, "including but not limited to . . . delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization." See 18 U.S.C. § 3161(h)(1)(F). The fact that "delay resulting from transportation" is listed as an example of a "proceeding" demonstrates that Congress intended to define "proceedings" for purposes of this section in a broad fashion to include transportation delays.

While this is admittedly not the most traditional understanding of the term "proceedings," there is support for a broad reading of the term. See Black's Law Dictionary (9th ed. 2009) (defining "proceeding" as including (i) "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and (ii) "[a]n act or step that is part of a larger action"). In any case, this is how Congress has chosen to define "proceedings" for purposes of section 3161(h)(1), a decision that the Court must respect. See Stenberg v. Carhart, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."); Tenn. Protection & Advocacy, Inc. v. Wells, 371 F.3d 342, 349-350 (6th Cir. 2004) ("[I]t is well-settled law that when a statutory definition contradicts the everyday meaning of a word, the statutory language generally controls: judges should 'construe legislation as it is written, not as it might be read by a layman.'" (internal citations omitted)); see also 73 Am. Jur. 2d Statutes § 136 (2d ed. 2013) ("[I]f the legislature has provided an express definition of a term, that definition is generally binding on the courts. In the exercise of its power to define terms, the legislature may include within the concept and definition of a term ideas which may not be strictly within its

ordinary definition."). Therefore, the fact that transportation to restore competency may be unrelated to prosecutorial action is immaterial. Rather, transportation delays "to and from places of examination or hospitalization," including transportation following a finding of incompetence, are subject to section 3161(h)(1)(F).

The Government does not challenge that the delay in transporting Defendant was unreasonable, nor does it dispute that dismissal is the required remedy here if section 3161(h)(1)(F) applies following a finding of incompetency. Accordingly, the Court finds dismissal of the indictment is required due to the delay in transporting Defendant following the Court's May 21, 2013 Order.

However, the Court notes that defense counsel requested at the October 3, 2013 hearing that Defendant continue to receive treatment from either the State or the Government for his mental condition until he is determined to be competent and can be released pursuant to the dismissal of the indictment. Accordingly, the Court orders counsel to appear on November 6, 2013 at 9:30 A.M. to discuss whether further proceedings or hospitalization is required pursuant to 18 U.S.C. § 4246 in light of Defendant's mental condition. Until resolution of that issue, the Court will stay dismissal of the indictment.

### C. Dismissal With or Without Prejudice

Although the Court finds that dismissal is appropriate, it must now determine whether the dismissal should be with or without prejudice. Defendant argues for dismissal with prejudice. Def.'s Mot. at 6-7. He claims that re-prosecution would be a miscarriage of justice because he believes there was "serious decompensation" in his condition during the transportation delay. Id. at 7. He also emphasizes that the delay was "a result of negligent behavior on the part of the United States Marshal Service and others." Id.; see also Def.'s Supp. Br. at 4 (Dkt. 37).

Section 3162(a)(2) sets forth the factors a Court must consider when determining whether to dismiss with or without prejudice for a Speedy Trial Act violation:

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. . . . In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

The Act does not "contain a default presumption one way or the other" regarding dismissal with or without prejudice. United States v. Robinson, 389 F.3d 582, 586 (6th Cir. 2004). "The trial court has discretion to decide whether to dismiss the indictment with or without prejudice, but in making that decision, the trial court must weigh and make written findings concerning" the factors outlined above. United States v. Berry, No. 10-20653, 2013 WL 2898211, at *5 (E.D. Mich. June 13, 2013). Therefore, the Court will consider each factor in turn.

First, Defendant concedes that the charged offense — threatening to injure a United States Senator — is serious. Def.'s Mot. at 6; see also United States v. Martin, 16 F. App'x 943, 946 (10th Cir. 2001) ("threatening to assault and kill a federal official is clearly a serious offense"). Although Defendant argues that the Court should consider that the calls were made from a location (Michigan) far from where the individuals reside and work (Washington, D.C.), he has pointed to no authority suggesting that the distance of the caller from the target of the threat undermines the seriousness of the offense. Moreover, although the telephone call may have been placed to Senator Levin's offices in Washington, D.C., the Court notes that United States Senators often spend time in both Washington, D.C. and the state they represent, here Michigan. Therefore, the first factor weighs in favor of dismissal without prejudice.

Second, as for the facts and circumstances that led to dismissal, Defendant concedes that the error was negligent, rather than willful or malicious. Def.'s Mot. at 7. In other words, "the facts and circumstances underlying the dismissal . . . can best be characterized as administrative errors, and not the result of gamesmanship or malice on the part of the government for the purpose of obtaining a tactical advantage." Sparks, 885 F. Supp. 2d at 103 (citing United States v. Bauer, 286 F. Supp. 2d 31, 34 (D.D.C. 2003)). Defendant does not suggest that the error should be imputed to the prosecution, rather than the U.S. Marshals Service. Id. Nor does Defendant assert that the error was anything other than an unfortunate accident. Accordingly, this factor counsels in favor of dismissal without prejudice, as well.

Lastly, the Court considers "the impact of a reprosecution on the . . . administration of justice." 18 U.S.C. § 3162(a)(2). "The main considerations that the courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." United States v. Gross, 432 F. App'x 490, 494 (6th Cir. 2011) (quoting Robinson, 389 F.3d at 589).

As to the latter inquiry, here there is no allegation that the error was anything other than a one-time anomaly by the U.S. Marshals Service. Defendant does not contend that this is a recurrent problem, or that there was intentional misconduct. See United States v. Wells, 893 F.2d 535, 539 (2d Cir. 1990) (dismissal with prejudice typically requires that the Government commit more than "an isolated unwitting violation"); see also Taylor, 487 U.S. at 338-339 ("Any . . . finding, suggesting something more than an isolated unwitting violation, would clearly have altered the balance."). Therefore, because there is no need to make a statement or deter future conduct, dismissal without prejudice is appropriate. Taylor, 487 U.S. at 342; see also United

15

States v. Ashmore, No. 11-94, 2012 WL 946634, at *2 (E.D. Tenn. Mar. 1, 2012) (where case "fell through the cracks," without evidence of a pattern of such negligence, dismissal without prejudice is appropriate) accepted and adopted by 2012 WL 947388 (E.D. Tenn. Mar. 20, 2012).

Defendant focuses on the final inquiry: whether "the defendant suffered actual prejudice as a result of the delay." Gross, 432 F. App'x at 494. He claims that he suffered a "serious decompensation" in his mental condition while awaiting transportation. Def.'s Mot. at 7. He also asserts that he received no access to treatment during this time. Id. at 6. In essence, Defendant contends that the lack of access to treatment during the delay was prejudicial.

However, Defendant already was found mentally incompetent to stand trial and he has offered no evidence — other than conclusory statements in his briefing — to prove that it was the delay that caused his condition to worsen, or even that such "decompensation" occurred at all. To that end, defense counsel conceded at oral argument that he is unsure to what extent Defendant had "decompensated." Defendant also does not contend that his condition so worsened during this period that the likelihood of ultimate restoration to competency has changed. Therefore, while the delay in transportation may have stalled his treatment or made treatment more difficult within the four-month timeline initially provided by the Court, it does not appear that this caused such prejudice to Defendant as to warrant dismissal with prejudice. Indeed, the Court notes that dismissal without prejudice is "not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." Taylor, 487 U.S. at 342.[5]

---

[5] The Court expresses no opinion as to whether re-prosecution in this case would be barred by a statute of limitations.

Defendant has not met his burden of showing that dismissal with prejudice is the appropriate remedy. See 18 U.S.C. § 3162(a)(2). The Court thus will dismiss the indictment without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court dismisses the indictment without prejudice. Counsel shall appear before the Court on November 6, 2013 at 9:30 A.M. to discuss whether further proceedings or hospitalization is required pursuant to 18 U.S.C. § 4246 in light of Defendant's mental condition. Until resolution of that issue, the Court stays dismissal of the indictment.

SO ORDERED.

Dated: October 18, 2013  s/Mark A. Goldsmith
Flint, Michigan  MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 18, 2013.

s/Deborah J. Goltz
DEBORAH J. GOLTZ
Case Manager